UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Dr. Douglas Schottenstein, M.D.<br>Plaintiff,<br><br>v.<br><br>The American Society for the Prevention of Cruelty to Animals (ASPCA);<br><br>and<br><br>The City of New York & NYPD Detective "John"[1] Ward;<br><br>and<br><br>Blue Pearl Holdings. LLC & Blue Pearl Operations, LLC;<br><br>and<br><br>John & Jane Does (1-10)[2] individually and in their official capacities.<br>Defendants. | Case No.<br><br>**42 U.S.C. § 1983 COMPLAINT**<br><br>**[JURY DEMAND]** |

COMES NOW Dr. Douglas Schottenstein, M.D. by and through his attorney, Richard Bruce Rosenthal, complaining of defendants as follows:

## PRELIMINARY STATEMENT

1. It has been said that, "[i]ndividual freedom finds tangible expression in property rights."[3] The Defendants, individually and working in concert, have disregarded this venerable principle by seizing, and keeping the private property of others (in this case a dog) without providing the constitutionally required hearings. This they cannot do.

---

[1] First name being fictitious and presently unknown to plaintiff

[2] Names being fictitious and presently unknown to plaintiff and being intended to be Doctors, Nurses, Veterinary Technicians, Police Officers, supervisory personnel and/or other employees of the Defendant American Society for the Prevention of Cruelty to Animals (ASPCA); Defendant City of New York; Defendant Blue Pearl Holdings. LLC and/or Blue Pearl Operations, LLC

[3] *United States* v. *James Daniel Good Real Property,* 510 U.S. 43, 61 (1993).

1

2.	This action seeks declaratory and injunctive relief and damages, costs and attorneys' fees, arising under 42 U.S.C §1983, §1985 and §1988, to redress deprivation, under color of law, of rights, privileges and immunities guaranteed by the 4th and 14th Amendments to the U,S, Constitution.

## JURISDICTION AND VENUE

3.	This Court has jurisdiction as Plaintiff's claims are based upon 42 U.S.C. § 1983 & § 1985 which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiffs by the U.S. Constitution.

4.	This Court has jurisdiction pursuant to § 1331 of the Judicial Code (28 U.S.C.A § 1331) as this is a civil action arising under the U.S. Constitution.

5.	This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) to remedy deprivations, under color of law, of Plaintiff's rights guaranteed by the 4th and 14th Amendments to the U.S. Constitution and applicable federal laws.

6.	Plaintiff's claims for declaratory relief and compensatory damages are sought under 28 U.S.C. §§ 2201 and 2202.

7.	This Court has jurisdiction over Plaintiff's state claims pursuant to the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367.

8.	Plaintiff's claims for attorney's fees & costs are predicated upon 42 U.S.C. § 1988 which authorizes attorney's fees & costs to prevailing parties pursuant to 42 U.S.C § 1983.

9.	Venue is conferred by 28 U.S.C § 1391(b), as Defendants American Society for the Prevention of Cruelty to Animals (hereinafter, "ASPCA"), the City of New York, NYPD Detective "John" Ward, Blue Pearl Holdings. LLC & Blue Pearl Operations, LLC. and John & Jane Does 1-10, maintain offices located in the Southern District of New York; the animal that is the underlying

subject of this lawsuit is being held in the Southern District of New York, and; the events giving rise to this claim occurred in the Southern Districts of New York.

## PARTIES

10. Plaintiff, Dr Douglas Schottenstein, M.D. resides at 168 Thompson Street, New York, N.Y.

11. The defendant, ASPCA is a domestic not-for-profit corporation organized and operating under New York State law with a principle place of business situated at 424 East 92nd Street, New York, N.Y. and maintains a veterinary hospital located at that address. ASPCA, in concert with, and acting as an agent of, the government, is thus subject to this civil rights action.

12. The defendant, City Of New York, (hereinafter, "the City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department and other agencies, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The defendant assumes the risks incidental to the maintenance of a police force and its other agencies and departments and the employment of police officers and employees of its other agencies and departments as said risks attach to the public consumers of the services provided by the New York City Police Department which is authorized and empowered to enforce the laws of the State of New York and City of New York, and acts as their agent therefore in the area of law enforcement. As the law enforcement arm of the City, the NYPD has the power to make and carry out, through their departmental policies, the laws, and official policies of the City of New York.

13. Defendants Blue Pearl Holdings. LLC & Blue Pearl Operations, LLC. (hereinafter "Blue Pearl") upon information and belief, are Delaware limited liability corporations authorized to do business within the State of New York and maintaining a veterinary medical practice and hospital at 1 West 15th Street, New York, NY.

14. Defendants John and Jane Does 1-10, inclusive, are the individual Doctors, Nurses, Veterinary Technicians, Police Officers, supervisory personnel and/or other employees of the Defendant American Society for the Prevention of Cruelty to Animals (ASPCA); Defendant City of New York; Defendant Blue Pearl Holdings. LLC and/or Blue Pearl Operations, LLC, as yet unidentified, who have or will in the future seize, detain, hold or restrain animal property without providing the requisite process due or other necessary means to effect a prompt, pre or post-seizure hearing.

## THE FACTS

15. Douglas Schottenstein, M.D. ("Doctor Schottenstein"), is the owner of a 5-year-old miniature Doberman Pinscher dog named Ronny.

16. Plaintiff has been taking Paxil, as prescribed by his doctor. In additional, his dog Ronny acts as an emotional support animal, helping Doctor Schottenstein to focus outward and the love, connection and responsibility of an emotional support animal might relieve certain aspects of Plaintiff's stress and anxiety.

17. Schottenstein lives alone, is single, and has no family in his life, and thus his connection with his dog Ronny is even stronger.

18. Due to Plaintiff's physical/mental state and his unshakable bond with Ronny, Plaintiff raised and treats Ronny like a child. Ronny is Plaintiff's emotional support animal and Plaintiff interacts with him, trains him, and connects with him as such.

19. Ronny was, and is, Plaintiff's crutch during the most trying times of Plaintiff's life.

20. Ronny was seized and detained by the defendants, which include NYPD Detective "John" Ward and the ASPCA., acting in concert with the City of New York and Blue Pearl Animal Hospital and several of their agents and representatives, without providing Doctor Schottenstein

4

any notice or a meaningful opportunity to be heard on the detention of Ronny. To date defendants have failed to provide the Doctor with any due process or a pre or post deprivation hearing to challenge the validity this this ongoing detention of his property.

21. On November 7, 2020 Doctor Schottenstein, after eating his dinner and taking his daily dose of Paxil suddenly became ill and vomited on the floor of the living room and the bathroom. As Doctor Schottenstein continued throwing up in the bathroom, Ronny ate the remains of his vomitus which were laying on the bathroom floor as a result of the Doctor having vomited. Upon seeing this, Doctor Schottenstein pushed Ronny from the bathroom, but not before he had consumed some quantity of the vomitus.

22. After leaving the bathroom, while Doctor Schottenstein was cleaning up, Ronny went outside onto the patio, as Ronny has independent use of 2 patios through an automated pet door.

23. Although unlikely, it is possible that while Ronny was on the patio, he could have ingesting something additional, which could have been thrown over by the neighboring apartments.

24. Approximately 10 minutes later, Ronny re-entered the apartment at which time Doctor Schottenstein observed Ronny walking very unsure of himself, and it appeared he could not see well. His mental status was very altered. He was looking right, then looking left, over and over again.

25. When the Ronny's behavior did not resolve within the next 10 minutes Doctor Schottenstein took him to defendant Blue Pearl Animal Hospital.

26. At Blue Pearl Animal Hospital Doctor Schottenstein spoke to the nurse who took Ronny in. and the doctor called Doctor Schottenstein shortly thereafter. Doctor Schottenstein told the veterinarian about the Paxil that he takes daily and about him throwing it up, and Ronny eating it, thinking that Ronny likely ingested some of it via his vomitus.

27. The Blue Pearl veterinarian stated that although Ronny was having seizures with consistent temp of 109 and heart rate of 300 when he arrived, he was able to stabilize Ronny and his condition had improved.

28. The veterinarian told Doctor Schottenstein to call the ASPCA for guidance on possible ingestion of unknown substance (in addition to the known ingestion of Paxil). Doctor Schottenstein placed the call to the ASPCA, pursuant to the Blue Pearl veterinarian's request, and ASPCA thereafter spoke to veterinarian, who provided the care as recommended by the ASPCA.

29. Ronny remained at Blue Pearl for 3 days, and on November 10, 2020 the veterinarian informed Doctor Schottenstein that Ronny was ready to go home, and informed him that Ronny's kidney function may be up and down for a little while, as Ronny clears the muscle breakdown that had occurred as a result of the seizures.

30. On November 11, 2020 when Doctor Schottenstein called defendant Blue Pearl to arrange for Ronny's discharge, he was informed that Ronny was no longer there and had been turned over on November 10, 2020 to the ASPCA at the direction of a New York City Detective Ward (Defendant).

31. Doctor Schottenstein thereafter contacted Detective Ward who informed him that he had obtained a warrant[4] to examine and treat Ronny, but not to seize him, and that he had seized and taken possession of the dog without first obtaining a warrant. He informed Doctor Schottenstein that he refused to return Ronny to Doctor Schottenstein or allow Doctor Schottenstein access to see Ronny or be privy to or involved in his care for over a week, despite his requests therefore,

---

[4] Notwithstanding the fact that Det. Ward had stated there was a warrant, to date (more than a week after the seizure (which allegedly was not authorized by the warrant), Det Ward has not provided Dr. Schottenstein with a copy of the warrant or the supporting affidavit or any process or written notice, despite multiple requests therefore.

6

stating that he was waiting for a blood toxicology test to come back before deciding whether he would return the dog.

32. On two occasions, plaintiff's attorney Richard Rosenthal spoke with defendant Detective Ward regarding the ongoing detention of Ronny. Detective Ward explained to Attorney Rosenthal that he had no expectations of filing criminal charges against Doctor Schottenstein. He also promised to send the search warrant and supporting affidavit to Attorney Rosenthal. Detective Ward explained to Attorney Rosenthal that the search warrant was a "warrant to examine and treat Ronny and was not a seizure warrant." Yesterday, November 24, 2020, contacted Detective Ward by text and asked him again for the search warrant and the affidavit. Detective Ward again promised to send the search warrant and affidavit, however, to date Attorney Rosenthal has not received the requested records.

33. The 14th Amendment to the United States Constitution explicitly provides that no person may be deprived of life, liberty, or property without due process of law.

34. Under the constraints of the 14th Amendment, the defendants are statutorily required to afford animal property owners with due process before effectuating a continued deprivation of their property rights.

35. From November 17, 2020 (the date of the seizure) and continuing to date, the plaintiff herein has not been charged with any crime prior to, during, or after the subject seizures. By reason of defendants' actions, including their unreasonable and unlawful conduct and their policy and practice of seizing and detaining animals without a warrant permitting such seizure and without any opportunity to be heard or a pre or post deprivation hearing as required by the U.S. Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), or any recovery procedure in place as required by the 2nd Circuit decision in *Krimstock v. Kelly*, 464 F.3d 246

(Krimstock III) and Judge Baer's subsequent decision (*Krimstock v. Kelly*, 506 F.Supp.2d 249), defendants deprived Doctor Schottenstein of his constitutional rights.

36. Defendant is withholding Plaintiff's dog from him without considering the harm, anxiety, and mental anguish, and he has suffered depression and other mental and emotional harm as a result of having Ronny being removed from his custody without his consent.

37. Doctor Schottenstein is not challenging validity of the alleged warrant permitting the defendants to examine and treat the dog, but rather the illegal and unauthorized seizure and detention of the dog, Ronny, after treatment, once the symptoms had subsided, without providing defendant the process due him under the U.S. Constitution.

38. Plaintiff therefore seeks a declaratory judgment that his rights were violated by Defendants' seizure and retention of the dog Ronny after the examination and treatment; declaratory judgment declaring the City of New York's policy and practice of seizing animals while not providing any sort of hearing to determine the validity of the seizure and continued retention, or providing any means of recovering such property whatsoever, to be unconstitutional and unlawful, and in violation of the 4th and 14th Amendments to the U.S. Constitution, and; a preliminary and permanent injunction enjoining defendants from seizing animals without provision for probable cause/validity hearings or recovery procedures in the future. Plaintiffs also seek an award of compensatory, punitive damages and attorney's fees.

## CAUSES OF ACTION

### COUNT ONE
### Due Process Claims Under The 14th Amendment of the United States Constitution
### (Procedural Due Process - 42 U.S.C. §1983)

39. The plaintiff repeats restates & reiterates the allegations set forth all of the above paragraphs, with the same force and effect as if fully set forth at length herein.

40. At all times described herein, the plaintiff possessed the clearly established property rights, under both Federal and New York State Law, to own and enjoy his animal property without unlawful deprivation of his use or enjoyment, without unlawful and arbitrary interference and without wholesale deprivation by the defendants.

41. As described above, the defendants herein detained plaintiff's property and deprived the plaintiff of his property rights without due process of law by creating a policy, practice and procedure whereby the defendants willfully, intentionally and deliberately fail to provide any process due plaintiff including but not limited to a pre or post deprivation hearing, or a retention hearing to demonstrate that retention is both proper and necessary to preserve the municipality's interest in the animal property

42. The actions, conduct, policies and practices of defendants as alleged herein, in direct defiance of the 14th Amendment Due Process requirements and systematically violates the plaintiff's right not to have his property taken without Due Process under the 14th Amendment to the Constitution of the United States and the Civil Rights Act of 1871, Title 42 U.S.C. §1983.

43. In effectuating such deprivations while simultaneously engaging in calculated, deliberate and successful efforts to ensure that the plaintiff was deprived of his property without due process of law, the defendants violated the plaintiff's right to procedural due process as guaranteed under the 14th Amendment of the United States Constitution; as such, each of the defendants are jointly and severally liable to the plaintiff pursuant to 42 U.S.C. § 1983.

44. Having substantially interfered with and/or deprived the plaintiff of his property interests without having afforded the plaintiff any opportunity at a meaningful time and in a meaningful manner within which to review the defendants' concerted behavior, the defendants violated the plaintiff's right to procedural due process as guaranteed to the plaintiff under the 14th Amendment

of the U.S. Constitution.

45. As a result of the aforesaid defendants' violation of plaintiff's procedural due process rights, the plaintiff has been damaged by being unable to use and enjoy his property, by being unlawfully deprived of his animal property (whom, notably, he considers to be companionate creatures with great personal value to him),

46. All of the injuries described herein above were actually and proximately caused by the concerted acts of the defendants described herein.

47. The aforesaid defendants' violation of plaintiff's due process rights was made under color of state law, which constitutes "state action" under 42 U.S.C. § 1983.

48. Having knowingly and deliberately violated the plaintiff's constitutionally protected rights, and concomitantly having caused the plaintiff to sustain monetary and emotional damages as a result thereof, each of the defendants are personally liable to the plaintiff, and the plaintiff is entitled to secure relief against the defendants, pursuant to 42 U.S.C. §1983.

49. The actions of the defendants were performed with an affirmative intent to injure the plaintiff through depriving him of his property, and were calculated efforts which the defendants undertook with actual knowledge that their actions were in actual and deliberate violation of the plaintiff's rights.

50. In view of the foregoing, in addition to compensatory damages a substantial award of punitive damages against the individually named defendants is warranted.

### COUNT TWO
### Under The 4th Amendment of the United States Constitution
### (Unreasonable seizure - 42 U.S.C. §1983)

51. The plaintiff repeats restates & reiterates the allegations set forth all of the above paragraphs, with the same force and effect as if fully set forth at length herein.

52. At all times described herein, the plaintiff possessed the clearly established property rights, under both Federal and New York State Law, to own and enjoy his animal property without unlawful deprivation of his use or enjoyment, without unlawful and arbitrary interference and without wholesale deprivation by the defendants.

53. As described above, the defendants herein unreasonably deprived the plaintiff of his property rights in that Detective Ward had seized and taken possession of the plaintiff's dog without first obtaining a warrant to do so and thereafter refused to return Ronny to Doctor Schottenstein or allow Doctor Schottenstein access to see Ronny or be privy to or involved in his care since November 17, 2020 despite his requests therefore

54. The actions, conduct, policies and practices of defendants as alleged herein, in direct defiance of the 4th Amendment systematically violates the plaintiff's right not to have his property unreasonably seized under the 4th Amendment to the Constitution of the United States and the Civil Rights Act of 1871, Title 42 U.S.C. §1983.

55. In effectuating such deprivations while simultaneously engaging in calculated, deliberate and successful efforts to ensure that the Plaintiff was deprived of his property, the defendants violated the Plaintiff's rights as guaranteed under the 4th Amendment of the United States Constitution; as such, each of the defendants are jointly and severally liable to the Plaintiff pursuant to 42 U.S.C. § 1983.

56. Having substantially unreasonably interfered with and/or deprived the Plaintiff of his property interests, the defendants violated Plaintiff's right to be secure in his property and effects as guaranteed to the Plaintiff under the 4th Amendment of the U.S. Constitution.

57. As a result of the aforesaid defendants' violation of Plaintiff's rights, the Plaintiff has been damaged by being unable to use and enjoy his property, by being unlawfully deprived of his animal

property (whom, notably, he considers to be companionate creatures with great personal value to him),

58.     All of the injuries described herein above were actually and proximately caused by the concerted acts of the defendants described herein.

59.     The aforesaid defendants' violation of Plaintiff's 4th Amendment rights were made under color of state law, which constitutes "state action" under 42 U.S.C. § 1983.

60.     Having knowingly and deliberately violated the Plaintiff's constitutionally protected rights, and concomitantly having caused the Plaintiff to sustain monetary and emotional damages as a result thereof, each of the defendants are personally liable to the Plaintiff, and the Plaintiff is entitled to secure relief against the defendants, pursuant to 42 U.S.C. §1983.

61.     The actions of the defendants were performed with an affirmative intent to injure the Plaintiff through depriving him of his property, and were calculated efforts which the defendants undertook with actual knowledge that their actions were in actual and deliberate violation of the Plaintiff's rights.

62.     In view of the foregoing, in addition to compensatory damages a substantial award of punitive damages against the individually named defendants is warranted.

## JURY DEMAND

63.     Plaintiff hereby demand trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff requests that the Court render judgment and provide the following relief,

**COUNT ONE (*Procedural Due Process Claim*) provide the following relief**

(a) Grant Plaintiff an immediate order requiring defendants to return Plaintiff's property, to wit, the dog Ronnie to Plaintiff.

(b) Grant Plaintiff compensatory damages against each of the individually named defendants in an amount to be determined by a jury as to the claims pursuant to 42 U.S.C § 1983; and

(c) Grant Plaintiff punitive damages against each of the individually named defendants in an amount to be determined by a jury as to the claims pursuant to 42 U.S.C § 1983;

(d) Grant Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b); and

(e) Grant Plaintiff any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. § 1988(c); and

(f) For such other and further relief as this court may deem just and proper.

**COUNT TWO (Unreasonable Seizure of Plaintiff's property)**

(g) Grant Plaintiff an immediate order requiring defendants to return Plaintiff's property, to wit, the dog Ronnie to Plaintiff.

(h) Grant Plaintiff compensatory damages against each of the individually named defendants in an amount to be determined by a jury as to the claims pursuant to 42 U.S.C § 1983; and

(i) Grant Plaintiff punitive damages against each of the individually named defendants in an amount to be determined by a jury as to the claims pursuant to 42 U.S.C § 1983;

(j) Grant Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b); and

(k) Grant Plaintiff any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. § 1988(c); and

(l) For such other and further relief as this court may deem just and proper.

/s/ Richard Bruce Rosenthal
_____
Richard Bruce Rosenthal
Federal Bar No. rb1834
545 E. Jericho Turnpike
Huntington Station, NY 11746
Tel:   (631) 629-8111
Cell:  (516) 319-0816
Fax:   (631) 691-8789
richard@thedoglawyer.com

Attorney for Plaintiff