UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Dr. Douglas Schottenstein, M.D. <br><br> Plaintiff, <br><br> v. <br><br> ASPCA, et al. <br><br> Defendants. | Case No. <br><br> Judge: <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## *PRELIMINARY STATEMENT*

This memorandum of law is submitted by Plaintiff Dr. Douglas Schottenstein, M.D ("Plaintiff") in support of his motion for a preliminary injunction. The facts are fully set forth in the accompanying complaint and will not be unnecessarily repeated at length herein. Plaintiff has suffered immediate and irreparable injury from the wrongful acts of Defendants. Unless this Court grants the requested preliminary injunction, plaintiff will continue to suffer same immediate and irreparable injury.

## STATEMENT OF FACTS

Douglas Schottenstein, M.D. ("Doctor Schottenstein"), is the owner of a 5-year-old miniature Doberman Pinscher dog named Ronny. The crux of Plaintiff's claims is that Plaintiff's constitutional rights to due process and to be free from unreasonable seizure (detention of Ronny) were violated when defendants detained Ronny past the examination and treatment scope of the warrant. Defendants have detained Ronny without providing plaintiff with an opportunity to contest the detention of his dog. Doctor Schottenstein is a highly respected doctor who has practiced in New York City for the past ten years. Ex. 1 (Copy of CV).

1

Plaintiff has been taking Paxil, as prescribed by his doctor. In additional, his dog Ronny acts as an emotional support animal, helping Doctor Schottenstein to focus outward and the love, connection and responsibility of an emotional support animal helps relieve certain aspects of Plaintiff's stress and anxiety. Schottenstein lives alone, is single, and has no family in his life, and thus his connection with his dog Ronny is even stronger. Due to Plaintiff's physical/mental state and his unshakable bond with Ronny, Plaintiff raised and treats Ronny like a child. Ronny is Plaintiff's emotional support animal and Plaintiff interacts with him, trains him, and connects with him as such. Ronny was, and is, Plaintiff's crutch during the most trying times of Plaintiff's life.

Ronny was seized and detained by the defendants, which include NYPD Detective "John" Ward and the ASPCA., acting in concert with the City of New York and Blue Pearl Animal Hospital and several of their agents and representatives, without providing Doctor Schottenstein any notice or a meaningful opportunity to be heard on the detention of Ronny. To date defendants have failed to provide the Doctor with any due process or a pre or post deprivation hearing to challenge the validity this this ongoing detention of his property.

On November 7, 2020 Doctor Schottenstein, after eating his dinner and taking his daily dose of Paxil suddenly became ill and vomited on the floor of the living room and the bathroom. As Doctor Schottenstein continued throwing up in the bathroom, Ronny ate the remains of his vomitus which were laying on the bathroom floor as a result of the Doctor having vomited. Upon seeing this, Doctor Schottenstein pushed Ronny from the bathroom, but not before he had consumed some quantity of the vomitus.

After leaving the bathroom, while Doctor Schottenstein was cleaning up, Ronny went outside onto the patio, as Ronny has independent use of 2 patios through an automated pet door. Although unlikely, it is possible that while Ronny was on the patio, he could have ingesting

2

something additional, which could have been thrown over by the neighboring apartments. Approximately 10 minutes later, Ronny re-entered the apartment at which time Doctor Schottenstein observed Ronny walking very unsure of himself, and it appeared he could not see well. His mental status was very altered. He was looking right, then looking left, over and over again. When the Ronny's behavior did not resolve within the next 10 minutes Doctor Schottenstein took him to defendant Blue Pearl Animal Hospital. At Blue Pearl Animal Hospital Doctor Schottenstein spoke to the nurse who took Ronny in. and the doctor called Doctor Schottenstein shortly thereafter.  Doctor Schottenstein told the veterinarian about the Paxil that he takes daily and about him throwing it up, and Ronny eating it, thinking that Ronny likely ingested some of it via his vomitus. The Blue Pearl veterinarian stated that although Ronny was having seizures with consistent temp of 109 and heart rate of 300 when he arrived, he was able to stabilize Ronny and his condition had improved.  The veterinarian told Doctor Schottenstein to call the ASPCA poison hotline for guidance on possible ingestion of unknown substance (in addition to the known ingestion of Paxil).  Doctor Schottenstein placed the call to the ASPCA, pursuant to the Blue Pearl veterinarian's request, and ASPCA thereafter spoke to veterinarian, who provided the care as recommended by the ASPCA

Ronny remained at Blue Pearl for 3 days, and on November 10, 2020 the veterinarian informed Doctor Schottenstein that Ronny was ready to go home, and informed him that Ronny's kidney function may be up and down for a little while, as Ronny clears the muscle breakdown that had occurred as a result of the seizures.  On November 11, 2020 when Doctor Schottenstein called defendant Blue Pearl to arrange for Ronny's discharge, he was informed that Ronny was no longer there and had been turned over on November 10, 2020 to the ASPCA at the direction of a New York City Detective Ward (Defendant).  Doctor Schottenstein thereafter contacted Detective Ward

who informed him that he had obtained a warrant[1] to examine and treat Ronny, not to seize him, Notwithstanding the limitation of the warrant, Detective Ward and the ASPCA seized and took possession of the dog without first obtaining a seizure warrant. Additionally, Detective Ward and the ASPCA have refused to return Ronny to Doctor Schottenstein or allow Doctor Schottenstein access to see Ronny or be privy to or involved in his care for over two weeks, despite his requests therefore, stating that he was waiting for a blood toxicology test to come back before deciding whether he would return the dog.

On two occasions, plaintiff's attorney Richard Rosenthal contacted defendant Detective Ward regarding the ongoing detention of Ronny. Detective Ward explained to Attorney Rosenthal that he had no expectations of filing criminal charges against Doctor Schottenstein. He also promised to send copies of the search warrant and supporting affidavit to Attorney Rosenthal, but as failed to do so. Detective Ward explained to Attorney Rosenthal that the search warrant was a "warrant to examine and treat Ronny and was not a seizure warrant." Yesterday, November 24, 2020, contacted Detective Ward by text and asked him again for the search warrant and the affidavit. Detective Ward again promised to send the search warrant and affidavit, however, to date Attorney Rosenthal has not received the requested records.

From November 7, 2020 and continuing to date, the plaintiff herein has not been charged with any crime prior to, during, or after the subject seizures. By reason of defendants' actions, including their unreasonable and unlawful conduct and their policy and practice of seizing and detaining animals without a warrant permitting such seizure and without any opportunity to be

---

[1] Notwithstanding the fact that Det. Ward had stated there was a warrant, to date (more than two weeks after the seizure (which allegedly was not authorized by the warrant), Det Ward has not provided Doctor Schottenstein with a copy of the warrant or the supporting affidavit or any process or written notice, despite multiple requests therefore.

heard or a pre or post deprivation hearing as required by the U.S. Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), or any recovery procedure in place as required by the 2nd Circuit decision in *Krimstock v. Kelly*, 464 F.3d 246 (Krimstock III) and Judge Baer's subsequent decision (*Krimstock v. Kelly*, 506 F.Supp.2d 249), defendants deprived Doctor Schottenstein of his constitutional rights.

Doctor Schottenstein is not challenging validity of the alleged warrant permitting the defendants to examine and treat the dog, but rather the illegal and unauthorized seizure and detention of the dog, Ronny, after treatment, once the symptoms had subsided, without providing defendant the process due him under the U.S. Constitution.

Defendant is withholding Plaintiff's dog from him without considering the harm, anxiety, and mental anguish, and he has suffered depression and other mental and emotional harm as a result of having Ronny being removed from his custody without his consent, and in violation of his civil rights.

Upon information and belief obtained from conversations with Detective Ward, a urine dip test may have given a positive for MDMA. A discussion of false positives for MDMA is explained in the attached letter from Neurologist Jeremy Meisel, M.D. See Ex. 2.

## ARGUMENT

The test for issuance of preliminary injunctive relief in the Second Circuit requires that a plaintiff show: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Tough Traveler, Ltd. v. Outbound Products,* 60 F.3d 964, 967 (2d Cir.1995), *on remand,* 989 F.Supp. 203 (N.D.N.Y. 1997), *aff'd,* 165 F.3d 15 (2d Cir 1998), *cert. denied,* 527 U.S. 1036, 119 S.Ct. 2394

(1999); *Tellium, Inc. v. Corning Inc.,* NO. 03 CIV. 8487, 2004 WL 307238, at *3 (S.D.N.Y. Feb 13, 2004) *Warner Bros. Inc. v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1125 (2d Cir.1989).

As set forth below, Plaintiff has more than enough evidence to show that he is likely to succeed on the merits of his claims, that he will suffer irreparable harm if the relief is not granted, and that the balance of the hardships tips sharply in his favor. Accordingly, Plaintiff asks this court to grant his plea for preliminary injunction, so that he can seek to recover his property by emerging victorious in a proceeding before a neutral magistrate, and enjoy his property without fear of undue interference by defendants in the future.

I. **PLAINTIFF WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION IS NOT GRANTED**

A showing of probable irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *Mamiya Co. v. Masel Supply Co. Corp.,* 719 F.2d 42, 45 (2d Cir.1983)). Accordingly, "[i]rreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages." *AIM Intern. Trading LLC v. Valcucine SpA.,* 188 F.Supp.2d 384, 387 (S.D.N.Y. 2002). Deprivation of Plaintiff's property without due process constitutes irreparable harm. Courts have found per se irreparable harm where the moving party alleges a constitutional deprivation for which monetary compensation is not an adequate remedy. *Cayuga Indian Nation of New York v. Village of Union Springs,* 293 F.Supp.2d 183, 196 (N.D.N.Y. 2003); See also *Albro v. Onondaga County, N.Y.,* 627 F.Supp. 1280, 1287 (N.D.N.Y.1986), finding irreparable harm where plaintiff alleged due process violations regarding overcrowding at county jail ("Plaintiff's allegations that they have suffered and will continue to suffer constitutional deprivations from the

conditions resulting from the overcrowding at the PSB jail satisfy the requirement of irreparable harm; deprivation of constitutional rights constitutes irreparable harm per se").

As in *Albro,* Plaintiff has suffered and will continue to suffer unconstitutional deprivations which monetary damages cannot adequately address, and there is no harm more immediate nor irreparable then the unreasonable deprivation of Plaintiff's dog Ronny.  The 14th Amendment to the United States Constitution explicitly provides that no person may be deprived of life, liberty, or property without due process of law.  Under the constraints of the 14th Amendment, the defendants are statutorily required to afford animal property owners with due process before effectuating a continued deprivation of their property rights.

Defendants ASPCA and New York City police are required to offer a hearing on the validity of the seizure and the continued retention of the property pursuant to, first, the Fourth and Fourteenth Amendments to the United States Constitution, then *Krimstock v. Kelly* (Krimstock v. Kelly, 306 F.3d 40 (2d Cir. 2002)), then *Krimstock III* (Krimstock v. Kelly, 506 F. Supp. 2d 249 (S.D.N.Y. 2007)) which distilled the holding of *Krimstock* into actual recommended procedures which were deemed to satisfy the Due Process requirement, and, finally Rules of the City of New York Title 38, Chapter 12, Subchapters A and B, which codified the *Krimstock III* holding and applied it to the City of New York.  Even with all of this weighty backing, no such hearing has been offered to Plaintiff.

Under these circumstances, Plaintiff seeks the Court's intervention to prevent irreparable harm. The foreseeable consequences of Defendants' continuing misconduct are severe and immediate. *AIM Intern. Trading LLC,* 188 F.Supp.2d at 387. This Court must act to protect Plaintiff's constitutional rights.  Absent a preliminary injunction, Plaintiff will suffer an incalculable loss of these rights which cannot be addressed by monetary damages.

## II.  PLAINTIFS WILL PREVAIL UPON THE MERITS

Plaintiff will demonstrate that he is likely to succeed on the merits of his causes of action. A party is entitled to a preliminary injunction if it makes a preliminary showing that it is likely to succeed on the merits or that "sufficiently serious questions going to the merits make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *AIM Intern. Trading LLC,* 188 F.Supp.2d at 387. Plaintiff more than meets this standard for each of the causes of actions he brings herein.

### a.  Fourteenth Amendment Cause of Action

Under the Fourteenth Amendment, no state may "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Plaintiff has been deprived of their personal property, namely their animals, by the NYPD, without due process, or any process. Plaintiff was given no notice before the deprivation, and no opportunity to be heard before or after the deprivation. This behavior on the part of defendants clearly violates the due process clauses in the Fourth, Fifth and Fourteenth amendments.

To prevail on a procedural due process claim, a Plaintiff must demonstrate: (1) that he possessed a protected property interest; and (2) that he was deprived of that interest without due process. *McMenemy v. City of Rochester,* 241 F.3d 279, 285-286 (2d Cir.2001)

#### i.  Plaintiff Has a Protected Property Interest

For a plaintiff to successfully claim a deprivation of property without due process he must first identify a protected property interest. *Ramapo Homeowners' Association v. New York State Office of Mental Retardation and Developmental Disabilities,* 180 F.Supp.2d 519, 526 (S.D.N.Y. 2002) (citing *West Farms Assocs. v. State Traffic Comm'n,* 951 F.2d 469, 472 (2d Cir. 1991), *cert*

8

*denied,* 503 U.S. 985, 112 S.Ct. 1671 (1992)). Property interests are generally derived from state law. *Id.* Personal property, such as an animal, is undoubtedly a protected property interest under New York Law. See e.g., *Yeomans v. Wallace,* 291 F.Supp.2d 70, 74 (D.Conn. 2003), *Krimstock v. Kelly,* 306 F.3d 40, 51 (2d Cir. 2002), *cert. denied,* 123 S.Ct. 2640, 156 L.Ed.2d 675 (2003) *Van Patten v. City of Binghamton,* 137 F.Supp.2d 98, 104 (N.D.N.Y. 2001) (finding that under New York law, a dog is property protected by Due Process Clause). This and other courts have repeatedly held that the deprivation of real or personal property involves substantial due process interests. *Krimstock,* 306 F.3d at 51; See also *U.S. v. James Daniel Good Real Property,* 510 U.S. 43, 53-54, 114 S.Ct. 492, 501 (1993) (finding that "Good's right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance"); *Connecticut v. Doehr,* 501 U.S. 1, 11, 111 S.Ct. 2105, 2113 (1991) ("[T]he property interests that attachment affects are significant."); *Fuentes v. Shevin,* 407 U.S. 67, 96-97, 92 S.Ct. 1983, 2002 (1972) (holding that loss of household furniture and appliances warrants a predeprivation hearing).

### ii. Plaintiff Is Being Deprived of His Property

Plaintiff has clearly been deprived of his dog Ronny since November 7, 2020, and he still has not obtained possession of his dog Ronny, or even been permitted to see Ronny. Plaintiff, to date, has not been accused of any criminal activity, no charges have been asserted against him, and he was given no reason for this erroneous deprivation. However, "[e]ven a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' under the terms of the Fourteenth Amendment." *Webster v. Chevalier,* 834 F.Supp. 628, 631 (W.D.N.Y. 1993). Deprivation of one's personal property by a state actor without notice or due process clearly violates the Constitution. *Yeomans,* 291 F.Supp.2d at 74.

### iii. Plaintiff was not Given Due Process

Once a plaintiff demonstrates that he has a protected property interest, the Court must next determine to what amount of legal process he is entitled. "In determining what process is due, a court must balance three factors: (1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;' and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *McMenemy,* 241 F.3d at 288 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)); *See also Van Patten v. City of Binghamton,* 137 F.Supp.2d at 104.

Typically, prior notice and a hearing are central components of a procedural due process property deprivation. *Harvey v. Morabito,* NO. CIV.9:99CV1913HGM/GL, 2003 WL 21402561, *7 (N.D.N.Y. Jun 17, 2003) (citing *James Daniel Good Real Property,* 510 U.S. at 53, 114 S.Ct. at 500). This is especially true where the deprivation is pursuant to an established regulatory scheme as opposed to the actions of an unregulated individual. *Id.* (citing *Alexander v. Cortes,* 140 F.3d 406, 411 (2d Cir.1998). However, exceptions to the predeprivation notice and hearing requirement are endured only in "'extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *Id.* (citing *James Daniel Good Real Property,* 510 U.S. at 53, 114 S.Ct. at 500).

Even assuming the case at bar does present such an extraordinary situation to give rise to an exception to the predeprivation notice requirement, there are no governmental interests at stake that would justify not providing such hearing *after* the dog has already been seized. Plaintiff was given absolutely no right to be heard, either before, or more notably, after their animals were taken.

A constitutional right to be heard "is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment--to minimize substantively unfair or mistaken deprivations of property." *Fuentes,* 407 U.S. at 80-81, 92 S.Ct. at 1994. Plaintiff has had had none. The police acted unilaterally and without any justification. They then gave the animals over the ASPCA, who, if it's even possible, actually are able to act with even less check to their authority.

In *Ortiz v. Regan,* 980 F.2d 138, 139 (2d Cir. 1992), the Second Circuit found that the plaintiff's procedural due process rights had been violated because " 'she got virtually no process, and the process she did get was ... a run-around.' ". The same situation has occurred here. Situations such as the one at bar are precisely what the Supreme Court was referring to in *Fuentes* and *Ortiz*. The police seized the animals in an arbitrary manner, resulting in "substantively unfair or mistaken" deprivation of property. After this occurred, there was no forum in which to challenge the state action. At this point in time, the property may be dead, affirmatively killed, or otherwise given over to others. In such a situation, there has clearly been a violation of due process. This court should prevent this substantially unfair and mistaken deprivation from happening again by granting the requested preliminary relief.

Finally, Defendants have not, and cannot, articulate a legitimate reason for the detention of Plaintiff's dog Ronny. to curtail the Plaintiff's Due Process rights.  There are many less invasive manners to control the activities of alleged wrongful pet owners without resorting to unconstitutional detentions.

b. **Plaintiff will Prevail**

Plaintiff has adequately demonstrated that they are more than likely to succeed on the merits or, at the very least, there are "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *AIM Intern. Trading LLC,* 188 F.Supp.2d at 387.m Accordingly, this court should grant Plaintiff's motion for a preliminary injunction.

b. **Fourth Amendment Cause of Action**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "[A]bsent an 'extraordinary situation' a party cannot invoke the power of the state to seize a person's property without a *prior* judicial determination that the seizure is justified." *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency,* 461 U.S. 555, 562 n.12, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) (quoting *Boddie v. Connecticut* , 401 U.S. 371, 378-79, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) ). "[S]eizures of personal property are 'unreasonable within the meaning of the Fourth Amendment,' without more, 'unless ... accomplished pursuant to a judicial warrant,' issued by a neutral magistrate after a finding of probable cause." *Illinois v. McArthur* , 531 U.S. 326, 330, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (quoting *United States v. Place* , 462 U.S. 696, 701, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) ).

In this case there are no exceptions which would authorize Defendants to continue detention of Plaintiff's dog Ronny. The search warrant only allowed the dog to be examined and treated. On November 10, 2020 when Plaintiff's vet told him he could take Ronny home, this is when the scope of the warrant ended.

### III. THE BALANCE OF HARDSHIPS TIPS DECIDELY TOWARD PLAINTIFF

In the present situation, the balance of the hardships tips decidedly towards Plaintiff. As explained above, Plaintiff still has not been able to reclaim his dog Ronny. Plaintiff is being told, in a legal sense, to give up his right to participate in the lawful activity of property ownership. It is worth noting, however, that in his mind and in the mind of a great many other, similarly situated property owners, he is being told to give up his family member. Animals are legally property; this is agreed upon. But these are not mere chattel; Ronny is Plaintiff's companion who was stripped away from him in traumatic fashion by callous individuals, and with no means for him to ever see them again.

Plaintiff demands only a *hearing*, the right to an opportunity to have a neutral magistrate determine the fairness of such deprivation. He does not challenge the NYPD's underlying right to examine and treat Ronny, but rather the seizure and detention of Ronny. In this situation, the hardships overwhelmingly tip towards Plaintiff. Plaintiff seeks only the opportunity to be heard, but he, and many others like him, will never be heard unless this court grants a preliminary injunction until such time as the Court decides the case.

## *CONCLUSION*

For all of the reasons set forth above, as well as those set forth in the accompanying Complaint, Plaintiff respectfully requests this court to issue a preliminary injunction ordering defendants to immediately return possession of his dog Ronny to him.

/s/ Richard Bruce Rosenthal

---
Richard Bruce Rosenthal
Federal Bar No. rb1834
545 E. Jericho Turnpike
Huntington Station, NY 11746
Tel:    (631) 629-8111
Cell:   (516) 319-0816
Fax:    (631) 691-8789
richard@thedoglawyer.com

Attorney for Plaintiff